Antonio MESSER d/b/a Tony's
Laundry & Dry Cleaners

v.

VIRGIN ISLANDS URBAN RENEWAL
BOARD et al.

Appeal of Antonio MESSER.

No. 79-1968.

United States Court of Appeals,
Third Circuit.

Argued April 21, 1980.

Decided June 11, 1980.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Ishmael A. Meyers, U. S. Atty., Charlotte Amalie, St. Thomas, V. I., Michael Kimmel, Atty., Dept. of Justice, Washington, D. C., for U. S. Dept. of Housing and Urban Development, et al.

Roy E. Parrott (argued), Asst. Atty. Gen., Charlotte Amalie, St. Thomas, V. I., for The Virgin Islands Urban Renewal Board and Josephine Ottley.

Allan A. Christian (argued), Frederiksted, St. Croix, V. I., for appellant.

Before ADAMS, MARIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

The primary issue in this appeal is whether one who moves from a property that is under consideration for redevelopment may receive damages for the costs incurred in the move when the move takes place before a governmental agency acquires title to the property or the right to possession of such property. We hold that he may not and accordingly affirm.

### I.

Antonio Messer brought this action against Virgin Islands Urban Renewal Board (the Board), its director, the Department of Housing and Urban Development (HUD), and the Department's area director for the Virgin Islands. Messer alleged that he was entitled to relocation assistance under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Relocation Act), 42 U.S.C. §§ 4601–4655 (1976). The Relocation Act provides relocation benefits to those persons and businesses that fit the statutory definition of "displaced persons." Section 101(6) of the Relocation Act states that the term "displaced person" means "any person who . . . moves from real property . . . as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a federal agency, or with federal financial assistance. . . ." 42 U.S.C. § 4601(6). Implementing regulations promulgated by HUD provide that displacement by "acquisition" includes a displacement which is the result of "[t]he obtaining by the acquiring agency of title to or the right to possession of such real property for a project." 24 C.F.R. § 42.55(e)(1) (1979).

The Board is a local government agency that administers urban renewal projects. It is eligible to receive funding from HUD under the National Housing Act of 1949. On December 15, 1972, the Board held a public hearing to discuss the possibility of urban renewal in a section of Frederiksted, St. Croix, known as the Hill Street Area. On March 28, 1973, the Virgin Islands Legislature approved an urban renewal plan filed by the Board, pursuant to V.I.Code Ann. tit. XXIX, § 92(f), which included a proposal for urban renewal of the Hill Street Area.

On April 1, 1973, Messer leased a building located at 13 Queen Street, in the Hill Street Area, for the purpose of conducting a dry cleaning business. The Board entered into a contract with HUD, on August 23, 1973, under which the Department was to assist the Board in carrying out certain renewal activities in the Hill Street Area. On November 20, 1973, the Board sent a letter to the owner of all business concerns in the area, including Messer, which advised that relocation benefits would be payable "in the event of displacement of business concerns or property." The letter stated that payment would be "based on the date of displacement" as defined in HUD regulations. It went on to specify that such "date is related to the date we acquire it," and, because "a move prior to the date specified in HUD regulations may jeopardize eligibil-

ity for a relocation payment, we urge you to check with us before making any move."

Messer leased another location outside the Hill Street Area for his dry cleaning business on September 1, 1975, and eventually moved to the new location on October 29, 1976. Nothing in the record indicates, however, that prior to Messer's move the Board had acquired either title to or a lease of the property where his business had been located, had ordered the owner or Messer to vacate the premises, or had issued a written notice of its intent to acquire the particular property for the urban renewal project.

In October 1976, Messer filed with the Board a claim for relocation benefits in which he asserted that he had not been paid benefits "as proposed in the public hearing held on December 15, 1972, nor as published in HUD's November 20, 1973 information letter." The claim, which amounted to approximately $22,000.00, was denied by the Board on May 27, 1977, on the ground that Messer did not satisfy the eligibility requirements set forth in the statute or regulations.

Pursuant to 24 C.F.R. § 42.325, Messer renewed his claim by submitting it to the local area office of HUD. The claim was denied by the local area office on January 10, 1978. HUD ruled that because Messer had not moved as a result of the acquisition of the property by the Board, his claim did not satisfy the statutory and regulatory requirements.

Messer brought suit in the district court on December 20, 1978, in which he sought judicial review of the denial of his claim. All defendants filed motions to dismiss the complaint for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6).

On May 18, 1979, the district court issued a memorandum opinion which held that Messer was not a "displaced person" under the Relocation Act and therefore was not eligible for benefits. It also concluded that Messer's move was not the result of the acquisition of the property in question as defined by the Relocation Act and implementing regulations. Inasmuch as the district court considered matters outside the pleadings, the dismissal may be properly characterized as an order granting summary judgment for the defendants. Fed.R. Civ.P. 12(b). Messer filed a timely appeal.

## II.

Section 101(6) of the Relocation Act makes relocation benefits available to a "displaced person." A "displaced person" is defined as "any person . . . who moves . . . as a result of the acquisition of . . . real property . . . or as a result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal Agency, or with Federal financial assistance . . . ." 42 U.S.C. § 4601(6).[1]

The regulations promulgated by HUD define displacement by acquisition as displacement resulting from: "The obtaining by the acquiring agency of title to or the right to possession of such real property for a project . . . ."[2] No acquisition of 13

---

1. 24 C.F.R. § 42.55 provides in pertinent part:

   (a) *General.* The rules set forth in this paragraph shall apply to all displaced persons . . . . A person qualifies as a displaced person for purposes of establishing basic eligibility for a relocation payment if:

   \* \* \* \* \* \*

   (2) Such person is displaced as a result of (i) the acquisition of such real property, in whole or in part, for a project as further provided in paragraph (e) of this section, (ii) code enforcement, voluntary rehabilitation, improvement of private property, or demolition as provided in paragraphs (f), (g), and (h) of this section.

2. 24 C.F.R. § 42.55(e)(1) (1979). Section 42.-55(e) further states that displacement by acquisition also includes:

   (2) The written order of the acquiring agency to vacate such property for a project; or

   (3) The issuance by the acquiring agency of a written notice to the owner of its intent to acquire the real property for such project, in accordance with § 42.136 . . . .

   Section 42.136 requires that the State agency provide the owner and each tenant with an official written notice of its intent to acquire the real property being occupied, if it makes such a determination. Neither Messer nor his landlord had received such notice. Also, the

Queen Street had occurred when Messer moved. His landlord had not been notified in writing of the Board's intent to acquire 13 Queen Street, nor had Messer received any notice to vacate the premises.

In *Harris v. Lynn*, 555 F.2d 1357 (8th Cir. 1977), the court stated that "Congress advisedly limited the eligible class [in Section 101(6)] to those forced to move as a result of an 'acquisition.'" The action that the Board had taken at the time Messer moved did not constitute acquisition.

During the hearings on the Relocation Act conducted by the House Committee on Public Works, concern was expressed that some person might move from a property prior to acquisition of the property.[3] A representative from HUD urged that:

> Relocation payments should not be made to those who move on the basis of speculation regarding the intent to take their property. We favor a provision limiting reimbursement to persons [who move] after some official act which clearly threatens displacement even though the property is never subsequently acquired.[4]

■ The "acquisition" requirement was written into the statute for the purpose of limiting benefits to situations in which the move is the result of an acquisition. The Supreme Court, in *Alexander v. Department of Housing and Urban Development*, 441 U.S. 39, 59, 99 S.Ct. 1572, 1585, 60 L.Ed.2d 28 (1979), stated, "In sum, the legislative history of the written order clause reveals no congressional intent to extend relocation benefits beyond the acquisition context." Protection was provided for those who moved *after* receiving formal notice of an acquisition because of a proposed project, but not to those who moved without notice, based merely on speculation that acquisition might take place. Because the "acquisition" of 13 Queen Street had not occurred by the time Messer moved, and no notice of an intent to acquire the property had been issued, he is not eligible for relocation benefits.[5]

Messer contends that the Board may have acquired the "right to possession," as stated in § 42.55(e)(1), of the Queen Street property. According to Messer, the district court confused the phrase "right to possession," with the term "right of possession." He alleges that, although the Board did not have the actual right of possession (*i. e.*, was not in possession), it is not clear whether it had "the right to possession." Messer claims that there is a distinction between the two terms, and he cites a case that distinguishes the literal meanings of the phrases.[6] He appears to argue that "right to possession" is acquired, inter alia, by the filing of a proposed urban renewal plan, the holding of hearings, and the posting of signs. We are not persuaded by this argument.

---

records at the Board do not indicate that at the time Messer moved any determination had been made that 13 Queen Street was to be acquired.

3. Uniform Relocation Assistance and Land Acquisition Policies—1970: H.R. 14898, H.R. 14899, S. 1 and Related Bills before the House Committee on Public Works, 91st Cong., 1st and 2d Sess. (1969–1970) (hereinafter 1970 House Hearings).

4. *Id.* at 1027–28.

5. Although Messer alleges that defendants made promises to the residents of the Hill Street Project Area at the public hearing held on December 15, 1972 that they would be paid relocation benefits, the statements were that relocation benefits would be paid in accordance with the Act and regulations.

6. *See Cahill v. Pinecreek Oil Company*, 38 Okl. 568, 134 P. 64 (1913), which involved an action for forcible entry and detainer. The Oklahoma Supreme Court addressed the questions of whether or not the plaintiff was in possession, and whether or not the defendant forcibly took possession from him. The Oklahoma Court stated that "[t]he holder of a deed conveying the title, or a lease on real estate, which expressly or by implication gives the lessee possession, has the right to possession, and if actually in possession, he not only has the right *to*, but the right *of* possession."

At the time of Messer's move, his landlord held title to the property in question, and the Board had no "right to possession" because it had neither title to nor any claim to possession of 13 Queen Street.

■ "Right to possession," as used in HUD regulations interpreting § 101(6) of the Relocation Act, means the legal right to obtain possession by a contract to purchase, by a lease, or by an eviction under eminent domain. Congress did not intend that the mere announcement of an urban renewal plan, or the mere inclusion of property within the geographic boundary of such a plan, without acquisition of particular property or notice of acquisition, would trigger the payment of benefits under the Act.[7] In sum, the district court correctly held that plaintiff's move was not the result of any "acquisition" or "right to possession" by the Board of the property in question.

### III.

Defendants' motion for dismissal was based on Rule 12(b)(6). The district court considered material outside the pleadings, however, and, in effect, granted summary judgment for defendants. "The liberality of the . . . Federal Rules is such that erroneous nomenclature does not prevent the court from recognizing the true nature of a motion." *Owen v. Kronheim*, 304 F.2d 957, 959 (D.C. Cir. 1962) (per curiam). Thus, where matters outside the pleadings are considered by the district court, a motion under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted will be treated as a Rule 56 motion for summary judgment. Fed.R.Civ.P. 12(b).[8]

■ The Supreme Court stated in *Poller v. Columbia Broadcasting*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962), that a summary judgment may be entered when the pleadings, depositions, affidavits, and admissions filed in the case show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Inasmuch as no genuine issues of material fact were present here, and because the district court referred to some matter outside the plead-

ings, it was not error to dismiss the claim as though a motion for summary judgment had been filed.

### IV.

The judgment of the district court will be affirmed.

---

7. Regulations may not be interpreted in such a manner as to go beyond the authority of the statutes they implement. *Dixon v. U. S.*, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965); *Brannan v. Stark*, 342 U.S. 451, 72 S.Ct. 433, 96 L.Ed. 497 (1952).

8. *See generally* C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1366 (1969).