**Sandra DAIGNEAULT, Plaintiff,**

v.

**PUBLIC FINANCE CORPORATION OF RHODE ISLAND, Defendant.**

Civ. A. No. 80–0521 S.

United States District Court, D. Rhode Island.

March 30, 1983.

Boyajian, Coleman & Harrington by John Boyajian, Alden C. Harrington, Providence, R.I., for plaintiff.

D'Amico, Gelineau & Connor by Peter P. D'Amico, Providence, R.I., for defendant.

## MEMORANDUM DECISION
## AND ORDER

SELYA, District Judge.

This case involves two consumer credit loan transactions between the plaintiff and defendant Public Finance Corporation of Rhode Island ("PFC"). The first loan was entered into on December 27, 1979 and the second on June 20, 1980. Contemporaneous with each transaction, plaintiff received a disclosure statement, attached hereto as Appendices 1 and 2, respectively. In this action, plaintiff alleges that each disclosure statement was incomplete and misleading, thereby violating the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and the regulations promulgated thereunder. 12 C.F.R. § 226, commonly known as Regulation Z.[1]

Plaintiff has moved for summary judgment on the ground that both loan disclosure statements "failed to disclose the amount of credit of which the obligor had the actual use." Complaint, Count I ¶ 5(a) and Count II ¶ 5(a). Defendant has objected. Oral argument was heard on March 24, 1983. The facts are not in dispute, so *brevis* disposition is in order under Fed.R.Civ.P., Rule 56. *United Nuclear Corp. v. Cannon,* 553 F.Supp. 1220, 1226 (D.R.I.1982), and cases cited therein. The parties acknowledge that the interpretation of section 1639(a) of TILA and section 226.8(d)(1) of Regulation Z is outcome-determinative.

Section 1639(a) provides pertinent in part:

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

. (1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

---

1. TILA was amended in 1980 by the Truth in Lending Simplification Act ("TILSA"), which is Title VI of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub.L. No. 96–221, 94 Stat. 132 (codified in scattered sections of 15 U.S.C.), as amended by Cash Discount Act, Pub.L. No. 97–25, 95 Stat. 144 (1981). Pursuant to TILSA, the Federal Reserve Board promulgated a revised Regulation Z, 46 Fed.Reg. 20, 848, 20, 892–949 (1981). As the transactions at issue in this case took place prior to the enactment of TILSA, TILA and the pre-TILSA version of Regulation Z apply here. *See Wright v. Tower Loan of Mississippi, Inc.,* 679 F.2d 436, 438 n. 1, 439 n. 4 (5th Cir.1982).

(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).

15 U.S.C. § 1639(a). Regulation Z, enacted by the Federal Reserve Board ("FRB") pursuant to its authority under section 1604 of TILA, provides, in material part:

(d) In the case of a loan or extension of credit which is not a credit sale, the following items, as applicable, shall be disclosed:

(1) The amount of credit ... which will be paid to the customer or for his account or to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term "amount financed."

12 C.F.R. § 226.8(d)(1). Careful perscrutation of subsection (d)(1) reveals that it merges the specific itemization requirements of subsections (1) and (2) of section 1639(a) and denominates this amalgam the "amount financed" required to be disclosed pursuant to section 1639(a)(3).

The problem in this case arises from PFC's disclosure, for each of plaintiff's loans, of the "amount financed", as defined by section 226.8(d)(1), and of the individual charges included in the amount of credit extended, as required by the foregoing regulation and by section 1639(a)(2) of TILA. PFC did not separately disclose the amount of credit of which plaintiff had the actual use. This sum, the "net loan proceeds," *see Sage v. Freedom Mortgage Co.,* 675 F.2d 1208, 1210 n. 1 (11th Cir.), *rehearing en banc granted,* 675 F.2d 1212 (11th Cir.1982), while not disclosed *per se,* can of course be arrived at by subtracting the itemized charges from the amount financed.

Plaintiff argues that the lender should have performed this calculation and revealed its results, pursuant to section 1639(a)(1). PFC contends that its disclo-sures, which conform to Regulation Z, serve adequately to fulfill the strictures of TILA. In the alternative, PFC urges that its failure to disclose as required by section 1639(a)(1) was in "good faith", because of its Regulation Z compliance, and is therefore excused from liability by section 1640(f).

■ As the First Circuit recently noted, TILA's manifest purpose is "to balance scales thought to be weigh[ted] in favor of lenders and is thus to be liberally construed in favor of borrowers." *Bizier v. Globe Financial Services Inc.,* 654 F.2d 1, 3 (1st Cir.1981). Thus, courts have no discretion to excuse a nondisclosure specifically required by TILA, especially when the nondisclosure has the potential for actual harm to the borrower. *Id.* at 4. Whether section 1639(a), however, mandates disclosure of the net loan proceeds has not specifically been decided by the First Circuit Court of Appeals. Other circuits are in apparent conflict on this issue. *Compare Pollock v. General Finance Corp.,* 552 F.2d 1142, 1143 (5th Cir.) (*on rehearing*) *cert. denied,* 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977) (holding that section 1639(a)(1) requires a separate disclosure of "consolidation loan payments and the like" rather than the incidental charges covered by (2)) with *Pridegon v. Gates Credit Union,* 683 F.2d 182, 194 (7th Cir.1982) (holding that "net loan proceeds" did not need to be disclosed under section 1639(a)(1) due to the requirements of Regulation Z).

Reading section 1639(a) as a whole, and giving full weight to each of its provisions, *cf. Scuncio Motors, Inc. v. Subaru of New England, Inc.,* 555 F.Supp. 1121 at 1128–29 (D.R.I.1982), one must conclude that subsection (a)(1) refers to a figure other than the amounts referred to in subsections (a)(2) and (a)(3). Subsection (a)(3) specifically mandates disclosure of "the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)". This provision would be devoid of meaning were no segregated figure disclosed pursuant to subsection (a)(1). PFC's interpretation would, in short, require the Court to

ignore altogether subsection (a)(1). To do so would do violence to accepted canons of statutory construction and would ignore or contradict the interpretation given section 1639(a)(1) by Judge Pettine of this Court in *Chapman v. Public Finance Corp. of Rhode Island,* 1 B.R. 501 at 504 (D.R.I.1979) and by the Fifth Circuit Court of Appeals in *Pollock v. General Finance Corp.,* 552 F.2d at 1144.

PFC argues that, since FRB is the primary source for interpretation and application of TILA, *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); 15 U.S.C. § 1604, FRB could—and did by its promulgation of section 226.8(d)(1) of Regulation Z—legitimately decide that the best interests of the borrower dictated merger of the disclosure requirements of subsections (a)(1) and (a)(2). The Seventh Circuit endorsed this view of the regulatory mosaic in *Pridegon v. Gates Credit Union,* 683 F.2d at 194.

■■■ As Judge Pettine concluded in *Chapman v. PFC,* however, section 1639(a) and Regulation Z do not contradict each other. He reasoned:

> While it is true that 12 C.F.R. § 226.-8(d)(1) requires disclosure, under the term "amount financed", of the total amount of credit, including all charges which are included in the amount of credit but which are not part of the finance charge, proper completion of this requirement only fulfills the obligation imposed by 15 U.S.C. § 1639(a)(3). It does not relieve the creditor of the additional statutory requirement that there be separate disclosure of the components of this total. . . . Nothing in 12 C.F.R. § 226.8(d)(1) indicates an intention to exempt from disclosure the component parts of the "Amount Financed;" that regulation only states a specific manner in which the requirement of 15 U.S.C. § 1639(a)(3) must be fulfilled. The regulation and the statute exist harmoniously; the regulation does not exempt, it only specifies a manner of compliance with part of the statute.

*Chapman v. PFC, supra,* at 503–04.[2]

■■■ The Court finds *Chapman* still persuasive,[3] despite the fact that the defendant has loosed a barrage of additional arguments in the case at bar. To interpret these provisions as the defendant suggests would be blithely to read section 1639(a)(1) out of existence. The FRB has been given extensive authority to interpret TILA, *Ford Motor Credit Co. v. Milhollin,* 444 U.S. at 566–69, 100 S.Ct. at 797–98, but it has not been given the power to overrule statutory requirements.[4] FRB's regulations should not be construed in a manner repugnant to TILA itself. *See Anderson Brothers Ford v. Valencia,* 452 U.S. 205, 219, 101 S.Ct. 2266, 2273–74, 68 L.Ed.2d 783 (1981). This Court therefore concludes that PFC was required to disclose the net loan proceeds as a separate figure on its loan disclosure

---

**2.** Such an interpretation conforms to three rules of statutory and regulatory construction. First, when there are two statutes, or regulations, upon the same subject, effect should be given to both if possible. *E.g., Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). *See Pollock v. General Finance Corp.,* 552 F.2d at 1144. Second, where there is an interpretation of a regulation which is reasonable and consistent with a statute, that interpretation is to be preferred. *United Telecommunications, Inc. v. Comm'r,* 589 F.2d 1383, 1390 (10th Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2839, 61 L.Ed.2d 284 (1979). Finally, regulations may not be interpreted in such a manner as to go beyond the authority of the statutes they implement. *Dixon v. United States,* 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965); *Messer v.*

*Virgin Islands Urban Renewal Bd.* 623 F.2d 303, 307 n. 7 (3d Cir.1980).

**3.** Although the Court is not bound by its own precedents or those of other judges of the same district to follow Judge Pettine's ruling in *Chapman* would comport with the doctrine of intra-court comity, which "establishes a general rule that, absent unusual or exceptional circumstances, judges of coordinate jurisdiction within a jurisdiction should follow brethren judges' rulings." *United States v. Anaya,* 509 F.Supp. 289, 293 (S.D.Fla.1980) (*en banc*).

**4.** Such a power could not be lawfully delegated in any event. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213–14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976).

statements in order to comply with its obligations under section 1639(d)(1) of TILA.[5]

PFC next asseverates that it should be excused from liability because it was acting in good faith conformity with a regulation of FRB.[6] Section 1640(f) of TILA provides that "[n]o provision of this section . . . imposing any liability shall apply to any act done or omitted in good faith in conformity with any . . . regulation . . . by the [FRB]."

■ The Court would be more sympathetic to this argument had PFC not been the defendant in *Chapman v. PFC, supra.* The decision in that case, requiring PFC to disclose the net loan proceeds, was rendered on October 9, 1979.[7] The first loan at issue here was entered into more than two months later (on December 27, 1979); and the second loan was made some nine months post-*Chapman* (June 20, 1980). Those are rather extensive gestation periods, the premises considered. By failing to disclose the net loan proceeds on either of plaintiff's loan, PFC, on the very same issue, knowingly flew in the teeth of the *Chapman* opinion. A lender which is in receipt of an order of a court of competent jurisdiction and which elects unceremoniously to ignore it in future dealings on the same subject can scarcely be heard to plead its good faith when called to task for subsequent substantially identical violations. While PFC indicated at oral argument that the *Chapman* decision had been appealed and then settled, and while the Court realizes that no collateral estoppel obtains, PFC was certainly aware of directly pertinent judicial criticism of its practices and chose, with its corporate eyes open wide, not to revise those practices (which it could have done easily and at no apparent expense). In doing so, it took a calculated businessman's risk; and it comes with ill grace for PFC now to complain that it acted in good faith reliance on its faulty interpretation of Regulation Z. The argument simply will not wash.

■ For the foregoing reasons, plaintiff's motion for summary judgment must be granted; and judgment must enter for the plaintiff in the amount of $1,000 on Count I and in like amount on Count II.[8] Plaintiff shall submit her application for counsel fees and disbursements within 15 days from the date hereof, and the defendant shall file its assent or opposition thereto (as the case may be) within 10 days after receipt of same.

---

5. For the same reason, PFC's argument that it has fulfilled the disclosure requirement of section 1639(a)(1) must be rejected. PFC may have divulged the figures needed for the calculation of net loan proceeds, but did not take the required further step. It is again attempting to read subsection (a)(1) out of existence. *See Chapman v. PFC, supra,* at 505–06.

6. Plaintiff contends that the defendant is barred from availing itself of this defense by failure to plead it specially under Fed.R.Civ.P., Rule 8(c). While this is arguably so, the Court need not decide that issue here, in light of its thinking on defendant's *bona fides.*

7. Indeed, Judge Pettine's decision in *Chapman v. PFC* affirmed a 1977 decision of the Bankruptcy Court on this same issue. *Chapman v. Public Finance Corp. of Rhode Island,* Bk. No. 74–391, slip op. at 7–13 (D.R.I. Aug. 24, 1977).

8. Although plaintiff is a joint obligor, with her husband, Donald Daigneault, on each of the two loans at issue, her right to recovery is not limited under TILA. *Allen v. Beneficial Finance Co. of Gary, Inc.,* 531 F.2d 797, 806 (7th Cir.), *cert. denied,* 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976). Any claims Donald Daigneault may make as to his share of damages must be made against plaintiff, as he is barred from bringing suit against defendant by TILA's one year statute of limitations. 15 U.S.C. § 1640(e). This plaintiff, therefore, is entitled to statutory damages of $1,000. for each violation (this being, as to each of the subject loans, less than twice the finance charge), 15 U.S.C. § 1640(a)(2)(i), as well as counsel fees. 15 U.S.C. § 1640(a)(3).

# APPENDIX 1

**PUBLIC FINANCE CORPORATION**
**OF RHODE ISLAND**
**479 MINERAL SPRING AVENUE**
**PAWTUCKET, RHODE ISLAND 02860**
**PHONE: 723-1740**

the principal amount or any installment is not paid when due, the unpaid principal amount shall bear interest thereafter at the monthly rate stated on the reverse side hereof. Also, default in making any payment shall, at the option of the lender, render the unpaid balance of the principal and accrued interest thereon at once due and payable.

INSURANCE: If charges have been made for Credit Life Insurance or Credit Disability Insurance only the first named borrower above will be insured under such insurance. If charges have been made for Joint Credit Life Insurance then both the borrower and his or her spouse will be insured under such insurance.

| ACCOUNT NO | TYPE | LIVE FILE NO | OFFICE NO |
|---|---|---|---|
| 13990224 | A | 10536 | 1039 |

**BORROWERS (NAMES AND ADDRESS)** 724-2065

DAIGNEAULT, DONALD A SANDRA
39 VERION STREET
PAWTUCKET RI 02860

RESIDENCE ADDRESS (IF NOT SAME)

| DATE OF LOAN | FIRST DUE DATE | OTHERS DUE SAME DAY OF EACH MONTH | MATURITY DATE | MONTHLY PAYMENTS FIRST PAYMENT / OTHERS EACH | PAYABLE IN |
|---|---|---|---|---|---|
| 12/27/79 | 01/26/80 | | 12/26/82 | 66.00 / 66.00 | 36 MONTHLY PAYMENTS |

**DESCRIPTION AND IDENTIFICATION OF SECURITY INTEREST:** This loan is secured by a security agreement on the following described property.
(Check proper box)
☐ Automobile - Make NONE, Yr. NONE, Model NONE
☐ Consumer Goods including but not limited to household goods, furniture, appliances and personal property of all kinds and description, all future accessions thereto, all additional consumer goods acquired within 10 days after the date of this loan, and all proceeds from the sale, exchange or disposition of such goods. The security agreement covering personal property described above provides that upon default of this loan, the creditor may begin proceedings to take possession of and sell the personal property described above and apply the sale proceeds to the unpaid balance of the loan.

- 24.33 % ANNUAL PERCENTAGE RATE $ 1166.11 PRIOR BALANCE FILE # PCL 1039
- 2376.00 TOTAL OF PAYMENTS (IF PAID ON SCHEDULE) NONE UNEARNED FINANCE CHARGES
- 701.19 FINANCE CHARGE (IF PAID ON SCHEDULE) OTHER
1. 1674.81 AMOUNT FINANCED $ 28.66 CREDIT LIFE INSURANCE
2. 60.58 CREDIT LIFE INS ☐ SNG. ☒ JNT. $ 39.44 CREDIT DISABILITY INSURANCE
3. 83.39 CREDIT DISABILITY INSURANCE $ 89.10 PROPERTY INSURANCE
4. 142.56 PROPERTY INSURANCE
NONE OFFICIAL FEES (RECORDING/FILING/RELEASING)
NONE FEES (LIC.-TITLE-REGIS.)
7. NET ON PRIOR ACCOUNT

REFUNDS

| | |
|---|---|
| NONE | NONE |
| NONE | NONE |
| NONE | NONE |
| JEWELERS | 197.56 CK NO 23473 |
| CUST & WARREN JEWELERS | 131.20 CK NO 23473 |
| PROCEEDS TO BORROWER (CK. # ) | NONE |
| PROCEEDS TO BORROWER (CASH) | 49.91 |

(14a + 14b = Line 1 Less The Sum Of Lines 2 Thru 13)

## NON-NEGOTIABLE CONSUMER NOTE

FOR VALUE RECEIVED, the undersigned jointly and severally promise to pay to the order of payee named above at its above office the actual amount of loan (amount financed) stated above being the principal amount of this note, together with interest at the rates shown on the reverse side hereof until fully paid. A month shall be any period of that same number of days.

Final Payment shall be Unpaid Principal and Interest.

Payment of principal and interest shall be made in consecutive monthly installments, beginning on the stated/due date for the first installment and continuing on the same day of each succeeding month to and including the stated due date for the final installment, all as set forth in the boxes and numbered items above.

Every payment made hereon shall be applied first to interest to date of actual payment, and remainder to principal. If the principal amount of this note or any installment is not paid when due, the unpaid principal amount shall bear interest thereafter at the rate stated above.

Default in making any payment shall, at the option of the holder hereof and without notice or demand, render the unpaid balance of the principal hereof and accrued interest thereon at once due and payable.

Payment is permitted to be made in advance in any amount on this loan at any time.

The undersigned agree that at such time as it becomes appropriate for the lender to terminate any financing statement and/or release any mortgage which may have been taken as security for this loan and any extension or renewal thereof the undersigned will, at that time, pay the lender whatever fees are then required for such termination and releasing. The total fees presently required for such termination and/or releasing are shown above.

Extension of the time of payment of all or any part of the amount owing hereon or any alteration, modification or waiver of any term or condition hereof at any time or times shall not affect the liability of any party hereof or co-maker, endorser, guarantor or surety hereof, it being the intent of all parties to this note that they shall continue jointly and severally obligated for the payment of the entire indebtedness until the same is actually paid in full. Co-makers, endorsers, guarantors, sureties, and all parties hereto severally waive notice of acceptance, presentment for payment, demand, protest, and notice of demand, nonpayment, and protest of this note.

The undersigned each hereby certifies that no undue influence or constraint has been exerted against the other with respect to the signatures of this note.

Borrower acknowledges receipt of the cash difference (Line 14 above) and authorizes the disbursements stated above. Borrower further acknowledges that he received a fully completed copy of the above Loan Statement and Note.

WITNESSES                  SIGNED

_____  1. _____ (SEAL)

_____  2. _____ (SEAL)

_____     _____ (SEAL)

**BORROWER'S COPY**

FORM 1455 R I COSMOS 9-76

## APPENDIX 2

**LOAN STATEMENT.**

LENDER

**PUBLIC FINANCE CORPORATION OF RHODE ISLAND**
479 MINERAL SPRING AVENUE
PAWTUCKET, RHODE ISLAND 02860
PHONE: 723-1740

DEFAULT AND EXTENSION: Every payment shall be applied first to interest to date of actual payment and remainder to principal. If the principal amount or any installment is not paid when due, the unpaid principal amount shall bear interest thereafter at the monthly rate stated on the reverse side. Also, if default occurs, the holder hereof may, at the option of the holder, render the entire unpaid principal balance and accrued interest at once due and payable

INSURANCE: If charges have been made for Credit Life Insurance or Credit Disability Insurance only the first named borrower above will be insured under such insurance. If charges have been made for Joint Credit Life Insurance, then both the borrower and his or her spouse will be insured under such insurance.

| ACCOUNT NO | TYPE | LIVE FILE NO | OFFICE NO |
|---|---|---|---|
| 13990224 | L | 80380 | 1039 |

BORROWERS (NAMES AND ADDRESS)

DAIGNEAULT, DONALD A, SANDRA
39 VERNON STREET
PAWTUCKET, RI, 02860

RESIDENCE ADDRESS (IF NOT SAME)

DESCRIPTION AND IDENTIFICATION OF SECURITY INTEREST: This loan and any extension or renewal thereof or future advance is secured by a security agreement dated __ 6/20/80 __
on the following described property:
(Check proper box)
☐ Automobile - Make NONE
☒ NONE Model NONE

| DATE OF LOAN | FIRST DUE DATE | OTHERS DUE SAME DAY OF EACH MONTH | MATURITY DATE | MONTHLY PAYMENTS FIRST PAYMENT | OTHERS - EACH | PAYABLE IN |
|---|---|---|---|---|---|---|
| 06/20/80 | 07/20/80 | | 06/20/84 | 92.00 | 92.00 | 48 MONTHLY PAYMENTS |

**21.00 % ANNUAL PERCENTAGE RATE**

| | |
|---|---|
| $ 4416.00 TOTAL OF PAYMENTS (IF PAID ON SCHEDULE) | $ 1486.31 PRIOR BALANCE LIVE FILE = |
| $ 1444.97 FINANCE CHARGE (IF PAID ON SCHEDULE) | $ NONE UNEARNED FINANCE CHARGES |
| $ 2971.03 AMOUNT FINANCED | $ ___ OTHER ___ |
| 1. $ 150.14 CREDIT LIFE INS ☐ SNG ☒ JNT. | $ 42.30 CREDIT LIFE INSURANCE |
| 3 $ 161.18 CREDIT DISABILITY INSURANCE | $ 58.23 CREDIT DISABILITY INSURANCE |
| 4. $ 353.28 PROPERTY INSURANCE | $ 118.80 PROPERTY INSURANCE |
| | $ ___ |
| | 5. $ 1266.98 NET ON PRIOR ACCOUNT |

NONE Consumer Goods including but not limited to household goods, furniture, appliances and personal property of all kinds and description, all future accessions thereto, all additional consumer goods acquired within 10 days after the date of this loan, and all proceeds from the sale, exchange or disposition of such goods. The security agreement covering personal property described above provides that upon default of this loan, the creditor may begin proceedings to take possession of and sell the personal property described above and apply the sale proceeds to the unpaid balance of the loan.

DESCRIPTION OF FINANCE CHARGE: The FINANCE CHARGE shown above consists of interest only and no other type of charge.

| | | |
|---|---|---|
| 6. YOUNGS FURNIT CK#23747 | $ 963.84 | |
| 7. ___ | $ NONE | |
| 8. ___ | $ NONE | |
| 9. ___ | $ NONE | |
| 10. ___ | $ NONE | |
| 11. ___ | $ NONE | |
| 12a. PROCEEDS TO BORROWER (CK. # ) | $ NONE | |
| 12b PROCEEDS TO BORROWER (CASH) | $ 776.61 | |

(12a. + 12b. = line 1 less the sum of lines 2 thru 11)

*Final Payment shall be Unpaid Principal and Interest

### NON-NEGOTIABLE CONSUMER NOTE

FOR VALUE RECEIVED, the undersigned jointly and severally promise to pay to the order of payee named above at its above office the actual amount of the loan (amount financed) stated above, being the principal amount of this note together with interest on the unpaid principal balance at the rate stated on the reverse side hereof.

Payment of principal and interest shall be made in consecutive monthly installments, beginning on the stated due date for the first installment and continuing on the same day of each succeeding month to and including the stated due date for the final installment, all as set forth in the boxes and numbered items above

Every payment made hereon shall be applied first interest to date of actual payment, and remainder to principal. If the principal amount of this note or any installment is not paid when due, the unpaid principal amount shall bear interest thereafter at the rate stated above.

Payment is permitted to be made in advance in any amount on this loan at any time.

Default in making any payment shall, at the option of the holder hereof and without notice or demand, render the unpaid balance of the principal hereof and accrued interest thereon at once due and payable, and the undersigned agree to pay the reasonable costs, including reasonable attorneys' fees, incident to proceedings to realize on security given in support of this loan in addition to the unpaid balance of principal and accrued interest.

Extension of the time of payment of all or any part of the amount owing hereon or any variation, modification or waiver of any term or condition hereof at any time or times shall not affect the liability of any party hereto or co-maker, endorser, guarantor, or surety hereof, it being the intent of all parties to this note that they shall continue jointly or severally absolutely liable for the payment of the aforesaid indebtedness until the same is actually paid in full. Co-makers, endorsers, guarantors, sureties, and all parties hereto severally waive notice of acceptance, presentment for payment, demand, protest, and notice of demand, non-payment, and protest of this note.

It is the agreement of all parties hereto, including the Payee hereof, to comply with Section 6-26-2, General Laws of Rhode Island, 1956 as amended 1966 and should it be adjudicated that the interest rate hereinabove agreed upon exceeds the amount allowed to be charged by said Section, then and in that event all amounts of interest so determined to be in excess of the amounts prescribed by said Section shall be applied to the payment of the principal sum hereof, the other terms and conditions of this note to remain in full force and effect

Borrower acknowledges receipt of the cash difference (lines 12a and 12b above) and authorizes the disbursements stated above. Borrower further acknowledges that he received a fully completed copy of the above Loan Statement and Note

WITNESSES

SIGNED:

1. _Donald Daigneault_ (SEAL)

_Colleen Conway_ 2. _Sandra E Daigneault_ (SEAL)