[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Rhode Island Department of Human Services (hereinafter "DHS"). The plaintiff in this matter seeks a reversal of the April 24, 1992 decision by an Administrative Appeals Officer for the DHS. The administrative hearing decision affirmed the Vocational Rehabilitation Agency's initial decision to deny the plaintiff's request for certain, additional vocational rehabilitation services. Jurisdiction in this court is pursuant to G.L. 1956 (1988 Reenactment) §42-35-15.
FACTS/TRAVEL
The plaintiff, Vito P. Girgenti (hereinafter the "plaintiff"), is a resident of Warwick, Rhode Island. He obtained a medical degree in 1963 from the University of Bologna (Italy) School of Medicine, and subsequently practiced medicine under temporary licenses throughout the United States and Canada. (Hearing Decision at 20). Currently, however, one must successfully complete the Federal Licensing Exam (hereinafter "FLEX Exam") in order to practice medicine. (Vocational Rehabilitation Case Memoranda at 3). To this end, the plaintiff attended numerous Continuing Medical Education Seminars. (Record at 7-8; Hearing Decision at 3). He also sought services under Rhode Island's Vocational Rehabilitation Program.
In June 1990, the Vocational Rehabilitation (VR) Agency received a referral concerning the plaintiff. The plaintiff had been referred to the VR Agency for the provision of a hearing aid and for other VR services. (Hearing Decision at 2). The RhodeIsland VR Policy and Procedure Manual (hereinafter "VR Manual") enumerates two basic eligibility requirements which conform to the mandates of federal law:
 1. The existence of a physical, or mental disability, which for that individual constitutes, or results in, a substantial handicap to employment.
 2. A reasonable expectation that Vocational Rehabilitation Services may benefit the individual in terms of employability.
19 C.R.I.R. 15 020 021 at 003 (1992); see 34 C.F.R. 361.31(b) (1992).
Finding that the plaintiff suffered from loss of hearing, that hearing was essential to acting as a "counselor," and that the plaintiff possessed a long work history, the VR Agency accepted the plaintiff for services on July 30, 1991. (Vocational Rehabilitation Case Memoranda at 2). On July 31, 1991, the plaintiff and the VR Agency completed an Individualized Written Rehabilitation Program (hereinafter "IWRP"). (Hearing Decision at 2). The vocational objective cited in this IWRP was "substance abuse counselor." (Transcript at 11). The IWRP was subsequently amended on September 20, 1991 to enumerate "practicing medical doctor" as the plaintiff's vocational objective.
The IWRP also cited several intermediate objectives to be met by the plaintiff and intermediate VR services to be afforded the plaintiff. (Hearing Decision at 2; Transcript at 11-12). The plaintiff's IWRP listed "Licensing Examination (FLEX)" as one of these objectives. (IWRP of Vito Girgenti, M.D.). The stated "evaluation criteria" for this objective read as follows:
"Successful completion of the exam." (IWRP of Vito Girgenti, M.D.). Thus, in accordance with the IWRP, the VR Agency covered the plaintiff's costs for transportation, lodging and food to take the FLEX Exam in Albany, New York from December 3 to December 5, 1991. The Agency also provided the requisite exam fee.
The plaintiff had unsuccessfully endeavored to pass the FLEX Exam on four (4) previous occasions between June 1989 and December 1991. (Hearing Decision at 3). The fifth attempt was also unsuccessful. The FLEX Exam requires a score of at least 75 in each of the two exam components; the plaintiff scored 68 on one part and 69 on the other part. (Hearing Decision at 3-4). Moreover, the DHS Appeals Officer found that the plaintiff's scores have not improved with each successive taking of the exam. (Hearing Decision at 13).
As a result of this fifth failure, the plaintiff met with his VR counselor on February 17, 1992 and informed the counselor of his FLEX exam results. (Hearing Decision at 4). The counselor made the following notation on that date: "Employment as a consultant with his present credentials, as a sanitarian, or in some other capacity appears the most viable option atthis point in time. Test taking strategy training was suggested to client who said he'd been exposed to this previously and didn't believe it would be helpful to him." (VR Case Memoranda at 9 (emphasis added)). On February 18, 1992, the VR Agency counselor forwarded a memo to the VR Agency's Supervisor, Bill Carpenter, which provided in relevant part: "I believe cont. retesting under FLEX test not warranted and that selective placement is better." (Memo from Roy Jobin to Bill Carpenter, February 18, 1991). Bill Carpenter responded, "[d]oes Dr. Girgenti want further funding for another FLEX test? If so, you will have to send a denial form — see me on details." (Hearing Decision at 4).
Subsequently, on February 4, 1992, the VR counselor again met with the plaintiff, and on February 9, 1992 made the following entry in the plaintiff's VR Case Memoranda:
 Met with client on 3/4/92 and reviewed grades attained on last five exams. . . . Test-taking strategies and relaxation therapy were discussed with client who is now agreeable to these and he obtained the name of a psychologist — Walt Saunders, Ph.D — Dr. Ruggiano's recommendation to assist with these same items. Additionally, client has purchased a special set of notes (post-exam debriefing?) which he believes would aid greatly in FLEX retaking. Based on aforenoted, counselor is open to Dr. Girgenti's retaking of exam, but can argue less strenuously at this time than he did initially.
(Hearing Decision at 4 (quoting VR Case Memoranda at 9-10)).
The plaintiff attributed his lack of success to stress. (Transcript at 6-7). He believed that a FLEX Exam review course at Harvard Medical School, a stress reduction session by a Mr. Williams, and a set of take-home practice questions and answers were his passport to licensure as a practicing medical doctor. (Transcript at 6-8). Accordingly, the plaintiff sent the VR counselor a letter dated March 2, 1992 requesting the following rehabilitation services from the VR Agency:
 1) Payment for New York State FLEX Exam of $175 for the June 1992 exam;
 2) Payment of rental car costs to Albany, N Y and back to Prov., R.I.;
 3) Payment of a motel and food for three days during the exam period;
 4) Payment of a stress development class; and
 5) Payment of a Harvard Medical School seminar.
(Hearing Decision at 4-5). All of the services requested were within the scope of services available from the VR Agency. (Transcript at 13; see 29 U.S.C. § 723(a) (1988)).
The plaintiff was verbally informed that his request for these vocational rehabilitation services had been denied. (Hearing Decision at 4-5). Thereafter the plaintiff appealed the VR Agency's verbal decision. (Hearing Decision at 5). After commencement of the Administrative Hearing held on April 1, 1992, the DHS Appeals Officer learned that the VR Agency had not sent the plaintiff any written notice whatsoever of its denial of his VR service request. The Appeals Officer noted that this created a jurisdictional question, adding that he could not render a decision without seeing a written notice. (Transcript at 21;see 19 C.R.I.R. 15 080 001 at 032 (1992) (referring to appeals from written Agency decisions)). On April 3, 1992, the DHS Appeals Officer therefore met with the plaintiff's attorney, Judith Allonby, and with the VR Agency's representative, Mr. Joseph Farrella, to discuss this lack of written notice. (Hearing Decision at 5). According to the Appeals Officer, they stipulated as follows:
 The VR Agency completed a VR-122 (Denial of Service) form, Ms. Allonby then completed a VR-121 (Request for Hearing) regarding the denial obtained on the VR-122 form. Mr. Farrell then completed the Agency portion of the VR-121 form. The new VR-121 form would be considered a new hearing request and assigned a new docket number. The prior hearing request (regarding the verbal notification) would be dismissed on jurisdictional grounds. Further, both parties agreed to consolidate the entire record of the prior hearing with the record of the new hearing request. Lastly, the parties agreed to waive further oral testimony in this matter. They did agree to submit memoranda due no later than April 10, 1992."
(Hearing Decision at 5; see Adjudicative Officer's letter of Alan Lemery, April 6, 1992). The parties timely submitted their post-hearing memoranda.
During the Appeals Hearing, much attention was paid to the IWRP. See (Transcript at 3-4, 11-12, 14-16, 18-20). For instance, William Carpenter, the VR Agency Supervisor, propounded that an IWRP is to be amended when it is determined that an individual is not capable of achieving a particular vocational goal. (Transcript at 12). He added that the plaintiff's IWRP still listed a vocational goal of "practicing medical doctor." (Transcript at 12-13). Notwithstanding, Mr. Carpenter also testified that since it was no longer reasonable to expect the plaintiff to achieve a vocational goal of practicing medical doctor and that since the plaintiff had not accomplished his IWRP's intermediate objective of passing the FLEX Exam, it was proper for the VR Agency to deny the plaintiff's VR services request. (Transcript at 12-14). Furthermore, the VR Agency's memorandum, as quoted in the Appeals Officer's Hearing Decision, reads: "Dr. Girgenti's position that an existing Individualized Written Rehabilitation Plan (IWRP), with a Plan goal of "practicing medical doctor," commits the Agency to repeated funding for FLEX examinations is not born out by Agency policy." (Hearing Decision at 11). Based upon the testimony at the Appeals Hearing, documents received into evidence, Agency policy and the parties' post-hearing memoranda, the DHS Appeals Officer sustained the VR Agency's decision on April 24, 1992. (Hearing Decision at 12).
The Appeals Officer found that the plaintiff's IWRP, as of April 24, 1992, listed "practicing medical doctor" as the plaintiff's vocational objective. (Hearing Decision at 12). Moreover, the record contains no evidence that the plaintiff had been consulted concerning the propriety of his vocational goal, and the availability of additional VR services to achieve the goal, prior to the VR Agency's denying his March 2, 1992 service request. The Appeals Officer, notwithstanding, concluded that the VR Agency was not obligated to fund any further attempt by the plaintiff to pass the FLEX Exam, for such funding was not part of the plaintiff's IWRP and no reasonable likelihood existed that the plaintiff would pass a sixth attempt at the FLEX Exam. (Hearing Decision at 12-13). The plaintiff was otherwise eligible for vocational rehabilitation services.
In response, the plaintiff filed the instant appeal. The issue confronting this Court is whether it was proper for the VR Agency to deny the plaintiff's request for VR services without first properly consulting with him and amending his written IWRP.
Appellate Review Pursuant to 42-35-15
Pursuant to G.L. § 42-35-15, the Superior Court possesses appellate jurisdiction to review decisions of various state administrative agencies. Section 42-35-15 provides in pertinent part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Section 42-35-15 precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of the witnesses or weight of the evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). Such a review is limited to an examination and consideration of the record to ascertain whether any legally competent evidence exists to support the agency's decision. BlueCross Blue Shield v. Caldarone, 520 A.2d 969, 972 (R.I. 1987). "Questions of law, however, are not binding upon the [reviewing] court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v.Norberg, 376 A.2d 1, 6 (R.I. 1977); see Carmody v. RhodeIsland Conflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986) (quoting Norberg, 376 A.2d at 6).
The DHS's administration in this matter inherently entailed interpretations of its own regulations. Moreover, since Rhode Island's Vocational Rehabilitation Program must comply with governing federal law, the decision also involved interpretations of federal law. Because the meanings of statutes and regulations are questions of law for the court to examine, the DHS's legislative interpretations are not binding on this court. SeeGryguc v. Bendick, 510 A.2d 937, 938-39 (R.I. 1986) (involving interpretation of statute); Citizens Savings Bank v. Bell, 605 F. Supp. 1033, 1041 (D.R.I. 1985) (involving construction of regulation). Before addressing these questions of law, however, it is necessary to examine the interplay between Rhode Island law and federal law which is involved in this case.
The Federal Rehabilitation Act
The Federal Rehabilitation Act of 1973[1] authorizes federal grants to assist state governments in furnishing vocational rehabilitation services to the handicapped under state plans instituted in accordance with 29 U.S.C. § 721. PennhurstState School v. Halderman, 451 U.S. 1, 11-14 (1981); 29 U.S.C. § 720
(1988). Although a state's participation in the program is voluntary, a participating state must fully comply with federal guidelines and regulations governing the Rehabilitation Act.Id. at 11. The governing federal law is found in 29 U.S.C. § 720
et seq. and 34 C.F.R. Part 361.
Under Rhode Island General Law § 42-12-8, the Rhode Island Department of Human Services is authorized to provide for vocational rehabilitation services. G.L. 1956 (1988 Reenactment) § 42-12-8. The DHS furnishes VR services pursuant to the RhodeIsland VR Policy and Procedure Manual which states that the VR program is to be "operated in compliance with the Federal Rehabilitation Act of 1973." 19 C.R.I.R. 15 080 001 at 001 (1992). The regulations contained in the VR Manual, moreover, are expressly based upon 29 U.S.C. §§ 723 et seq. and 34 C.F.R. Part 361.
Under VR Manual § 4, 29 U.S.C. § 722, and 34 C.F.R. § 361.40, an IWRP must be initiated and periodically updated for each person eligible for VR services. The IWRP is essentially an agreement between an eligible individual and the VR counselor which outlines the individual's VR service plan. 19 C.R.I.R. 15 080 001 at 010 (1992); (Transcript at 11-12).
While sufficient legally competent evidence exists in the record to support the conclusion that there existed no reasonable expectation that the plaintiff would attain the vocational goal of practicing medical doctor, this does not resolve the issue of whether denying the plaintiff's VR Service request without his full participation and without amending his IWRP complied with the VR Manual. Resolution of this issue presents a question of first impression which requires the court to construe the relevant provisions of the Rhode Island VR Policy and ProceduralManual.
The Agency's Interpretations of its Own Regulations
An agency's interpretation of its own regulations "is given controlling weight unless the reviewing court determines it to be clearly erroneous or inconsistent with law." Citizens SavingsBank v. Bell, 605 F. Supp. 1033, 1041 (D.R.I. 1985). Thus, this Court recognizes "that the deference due to an agency's interpretation of its governing statute and regulations is far from blind allegiance." Id. at 1042.
As quoted by the Appeals Officer, the Rhode Island VR Policyand Procedure Manual provides that the IWRP "is a critical document and must be mutually developed and implemented by the individual and the counselor." (Hearing Decision at 7). It also provides that the IWRP "is continuously developed that in the sense that if changes are needed (i.e., in the vocational goal, and the type of service), it must be amended to reflect those changes." (Hearing Decision at 7). The IWRP is to be "jointly developed in writing by the individual and the Vocational Rehabilitation Counselor. . . . ." (Hearing Decision at 7). Finally, "any changes in the individual's vocational goal or in the services needed to attain the goal and the intermediate objectives necessitates that an amendment to the IWRP be jointly developed with the individual." (Hearing Decision at 8).
The provisions of the VR Agency's policy and procedure manual which concern the IWRP are clear on their face. The Manual explicitly provides that alterations in an individual's vocational goal or in the services needed to attain it require a "jointly developed" amendment to the individual's IWRP. Under the VR Agency's position, however, the Agency may unilaterally decide to amend an individual's vocational goal and, in turn, deny services which had been necessitated by the goalwithout consulting the individual and amending his IWRP appropriately. Such a view renders meaningless the requirement of "jointly developed" IWRP amendments. Pursuant to the VR Agency's instant action, the fundamental decisions concerning an individual's vocational goal and required VR services will be made before the individual's views are ever even expressed. Certainly, this practice contravenes the legislative intent behind the enactment of these regulations and is clearly erroneous given the plain meaning of their language.
Furthermore, the VR Agency's interpretation is also contrary to federal law. 29 U.S.C. § 722(c) provides as follows:
 The Commissioner shall also insure that (1) in making any determination of ineligibility referred to in subsection (a) of this section, or in developing and carrying out the individualized written rehabilitation program . . . in the case of each individual with handicaps, emphasis is placed upon the determination and achievement of a vocational goal for such individual, [and] (2) a decision that such individual is not capable of achieving such a goal, and thus is not eligible for vocational rehabilitation services provided with assistance under this part [29 U.S.C. §§ 720 et seq.], is made only in consultation with such individual . . ., and only upon the certification, as an amendment to such written program, or as a part of the specification of reasons for an ineligibility determination, as appropriate, that the preliminary diagnosis or evaluation of rehabilitation potential, as appropriate, has demonstrated that such individual is not then capable of achieving such a goal . . . . 29 U.S.C. § 722(c) (1988) (emphasis added).
The unitalicized portions of § 722(c) as quoted above refer to the Commissioner's duties with respect to an individual who was adjudged ineligible to receive VR services based upon a preliminary diagnosis. The italicized portions, on the other hand, concern the Commissioner's duties regarding an individual who was initially deemed eligible to receive VR service but who, upon later evaluation of rehabilitation potential, was adjudged not capable of achieving his vocation goal or, otherwise stated, no longer eligible for VR services, as is the case with the plaintiff at bar. See 29 U.S.C. §§ 722(a), (c) (1988),34 C.F.R. § 361.31(6), 35(c) (1992). At issue is whether § 722(c) requires Rhode Island's VR Agency to consult with an individual and amend his IWRP prior to denying him VR services necessary to achieve his stated vocational objective.
Statutory Construction
The Court is charged with the final responsibility for construing statutes. Gallison v. Bristol School Committee,493 A.2d 164, 166 (R.I. 1985). When construing a statute for the first time, a court should look to the rules of statutory construction to aid it in its task. The Rake v. Gorodetsky,452 A.2d 1349, 1147 (R.I. 1982). A court's paramount task in construing a statute is to ascertain the intent behind the enactment of that statute and to effectuate that intent whenever lawful and within the competence of the legislature. DunneLeases Cars Trucks, Inc. v. Kenworth Truck Co., 466 A.2d 1153, 1156 (R.I. 1983). Courts should effectuate the intent of the legislature by examining the language, nature and object of the statute under consideration and by giving the words of the statute their plain and ordinary meaning. Lake v. State,
507 A.2d 1549, 1351-52 (R.I. 1986). When examining the language of a statute, courts should strive to give effect to all of that statute's provisions and avoid construing any sentence, clause or word as unmeaning or surplusage. R.I. Dept. of Mental Health v.R.B., 549 A.2d 1028, 1030 (R.I. 1988). When the language of a statutory provision is clear on its face, the court must give effect to the plain meaning of that provision. Gilbane Co. v.Poulas, 576 A.2d 1195, 1196 (R.I. 1990).
Moreover, the DHS regulations contained in the VR Manual and construed by the DHS and the VR Agency were promulgated pursuant to the authority of 29 U.S.C. § 701 et seq.. Accordingly, two additional, accepted rules of statutory and regulatory construction are invoked. First, "where there is an interpretation of a regulation which is reasonable and consistent with a statute, that interpretation is to be preferred."Daigneault v. Public Finance Corp. of Rhode Island,562 F. Supp. 194, 197 n. 2 (D.R.I. 1983). Second, "when there are two . . . regulations, upon the same subject, effect should be given to both if possible." Id.
Since 29 U.S.C. § 722(c) is also clear on its face, the Court must give its words their plain and ordinary meaning. This provision permits the VR Agency to decide an individual is not capable of achieving his or her vocational goal and, in turn, is not eligible for VR services only after consulting with the individual and amending his IWRP. Section 722(c) obviously prohibits a determination that an individual is not capable of attaining a particular vocational goal and is therefore not eligible for VR services unless the decision is made with the individual's full participation. This conclusion is bolstered by the regulations interpreting 29 U.S.C. § 701 et seq. Specifically, 34 C.F.R. § 361.35(c) provides that "whenever the state unit determines on the basis of clear evidence that a . . . recipient of vocational rehabilitation is ineligible for services, there must be a certification . . . [which] indicates the reasons for the ineligiblity determination and is made only after full consultation with the individual."34 C.F.R. § 361.35(c)(1)-(2) (1992). Most notable, furthermore, is34 C.F.R. § 361.40(d) which provides as follows:
 (d) Review of ineligibility determination. The state plan must assure that if services are to be terminated under a written program because of a determination that the individual with handicaps is not capable of achieving a vocational goal and is therefore no longer eligible, . . . [t]his decision is made only with the full participation of the individual . . . [and] [t]he rationale for the ineligibility decision is recorded as an amendment to the individualized written rehabilitation program certifying that the provision of vocational rehabilitation services has demonstrated that the individual is not capable of achieving a vocational goal . . . .
34 C.F.R. § 361.40(d) (1992) (emphasis added).
The DHS's interpretation of the Rhode Island VR Policy andProcedure Manual, however, permits the VR Agency to determine an individual's vocational goal and the VR services available to the individual without his or her full participation. This interpretation is not consistent with the governing federal law and does not give full effect to the relevant federal regulations. Thus, in order to effectuate legislative intent and to bring the DHS's interpretation of its regulations into conformity with 29 U.S.C. §§ 701 et seq. and 34 C.F.R. Part 361, the Court holds that any decision by the VR Agency concerning an individual's capability of achieving a particular vocational goal and eligibility for receiving VR services necessitated by that goal must be made with the full participation of the individual and must be recorded as an amendment to the individual's IWRP which indicates the rationale underlying any ineligibility decision.
The VR Agency in its brief asserted that it did not deny the plaintiff all services, but rather it denied the particular
services requested by the plaintiff. (VR Agency Trial Brief at 7). According to the Agency, therefore, "avenues remain open to the plaintiff." (VR Agency Trial Brief at 7). This raises the issue of whether the VR Agency has deemed the plaintiff "not eligible for vocational rehabilitation services" so as to bring the VR Agency's action within the scope of 29 U.S.C. § 722(c) and 34 CFR § 361.40(d). Resolution of this issue involves interpretation of the word "services" as used in these federal provisions.
In Cook v. Com., Bur. of Vocational Rehabilitation, the plaintiff, who suffered from a crippling disability, received certain rehabilitative services from Pennsylvania's Bureau of Vocational Rehabilitation (BVR). 405 A.2d 1000, 1001 (Pa. Cmwlth 1979). Subsequently, the plaintiff again sought services from the BVR to assist his attending law school. Id. The request was denied. Id. On appeal, the BVR asserted that it did not find the plaintiff "ineligible to receive rehabilitative services," for it had supplied him with numerous other services. Id.
at 1005. The court found this argument to be directly contrary to the express terms of 29 U.S.C. § 722(c). Id. Under § 722(c), the court held, the refusal to grant any service requests
called into play the requirements of § 722(c). Id. Furthermore,34 C.F.R. § 361.40(d) makes clear that § 722(c) refers to the termination of services under a particular existing IWRP as opposed to discontinuation of VR service altogether.
Holding
The VR Agency's refusal to grant the plaintiff's service request was a termination of services under his September 20, 1991 IWRP. The record reveals that the Agency's denial emanated from its unilateral determination that the plaintiff was not capable of achieving the vocational goal of "practicing medical doctor." Since this decision was not made with the plaintiff's full participation and was not recorded as an amendment to the IWRP, it was wrongful and clearly repugnant to both state and federal law. In this case, the Court therefore finds the DHS's conclusion that it acted properly in denying the plaintiff's request for further VR services without consulting the plaintiff and amending his IWRP was made upon unlawful procedure and was affected by other error of law. The VR Agency is not obligated to fund repeatedly the plaintiff's attempts to pass the FLEX Exam. Rather, the Agency is required to enlist the plaintiff's fullparticipation in making decisions concerning his capability of achieving a vocational goal and eligibility for services necessitated by that goal.
CONCLUSION
After a review of the entire record before it, the Court finds that the decision of the Department of Human Resources is in violation of statutory provisions, was made upon unlawful procedure and is affected by other error of law. Accordingly, the April 24, 1992 DHS decision is reversed. The Court directs the DHS to make all decisions concerning the plaintiff's ability to achieve the vocational goal of "practicing medical doctor" and eligibility to receive requested VR services in consultation with the plaintiff and to record any such decision as an amendment to his IWRP. Such decisions require the plaintiff's fullparticipation.
[1] The Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.