Joseph W. FRICKER, Plaintiff,

v.

TOWN OF FOSTER, et als.,
Defendants.

No. C.A. 84–0156 S.

United States District Court,
D. Rhode Island.

Oct. 24, 1984.

Hogan & Hogan, Edward T. Hogan, East Providence, R.I., for plaintiff.

William T. Gerstenblatt, Joel K. Gerstenblatt, and Gorham & Gorham, Bradford Gorham, Providence, R.I., and Breslin & Sweeney, David F. Sweeney, Warwick, R.I., for defendants.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This is a civil action brought in this court on March 30, 1984 by Joseph W. Fricker against the Town of Foster, a Rhode Island municipality, and the five members of the town's governing body, the Foster Town Council. These last-mentioned defendants (Franklin G. Arnold, Bruce D. Campbell, Joyce C. Hopkins, Paul W. Lunblad, and John F. Quinn) have been sued both individually and in their official capacity. The case is premised on this court's federal question jurisdiction. 28 U.S.C. § 1331. Pendent state-law claims are also asserted.

The matter is before the court on the defendants' motion to dismiss the plaintiff's amended complaint. Oral argument was heard on October 9, 1984, at which time the court took the matter under advisement.

### I.

The pending motion implicates Fed.R. Civ.P. 12(b)(6). This court recently addressed the standard for review under that rule in *Lopez v. Bulova Watch Co.*, 582 F.Supp. 755, 767 (D.R.I.1984):

> When considering a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the court must view all facts and inferences in the light most favorable to the nonmoving party. *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976); *Seveney v. United States Government, Depart-*

*ment of the Navy*, 550 F.Supp. 653, 655 (D.R.I.1982). Only if it appears beyond doubt from the pleadings that the party opposing the motion can prove no set of facts which would support the claim for relief may the court grant the motion to dismiss. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Melo-Tone Vending v. United States*, 666 F.2d 687, 688 (1st Cir.1981); *Ballou v. General Electric Co.*, 393 F.2d 398, 399 (1st Cir.1968); *Newport National Bank v. United States*, 556 F.Supp. 94, 95 (D.R.I.1983).

The defendants, asserting want of subject matter jurisdiction, also rely on Fed.R. Civ.P. 12(b)(1). The standard is similar: the court will not dismiss a complaint for want of subject matter jurisdiction unless it clearly appears that no colorable hook exists upon which the court's jurisdiction may be hung.

While the motion discusses several potential grounds for dismissal, it necessarily brings before the court all substantial defects in the amended complaint which are readily apparent from the face of Fricker's pleadings. *Black v. Brown University*, 555 F.Supp. 880, 886 (D.R.I.1983); *cf. Literature, Inc. v. Quinn*, 482 F.2d 372, 374 (1st Cir.1973).

### II.

The court presents the facts well pleaded in the amended complaint in the manner most hospitable to the plaintiff. It appears that Fricker, a former Providence police officer and railway security operative, was appointed in 1970 as police chief in Foster. He was reappointed in 1976, when the town adopted a home-rule charter (Charter). The amended complaint alleged neither the existence of a written employment contract nor a fixed term of office. Like so many local police executives, Fricker served at the pleasure of the town fathers. *See* text, *post*, at Part VII.

In late 1979, the Rhode Island State Labor Relations Board (Board), a state agen-

cy created pursuant to R.I.Gen.Laws § 28–7–4, certified the Fraternal Order of Police, Lodge No. 30 (F.O.P.) as the bargaining representative for the members of the Foster police department (including the chief). Fricker alleges that he was instrumental in securing this designation and that the defendants were hostile thereto.

Collective bargaining ensued. Plaintiff, though not describing his role (if any) in the bargaining, avers "upon information and belief" that on January 21, 1980, "because of his union support and activity ... and because of defendants' opposition to said support and activity," Amended Complaint at ¶ 16, he was dismissed by the defendants. A letter informing him of his removal was delivered on that date.

The F.O.P. grieved the town's unwillingness to talk over Fricker's discharge with the union. The Board, by decision dated October 24, 1980 (Decision), upheld the protest. The Board found that the town's recalcitrance was in violation of R.I.Gen. Laws § 28–7–13(7), in that the defendants had refused to discuss the matter. It is of significance to note the statutory underpinnings of the Decision: R.I.Gen.Laws § 28–7–13 makes it "an unfair labor practice for an employer: ... (7) (t)o refuse to discuss grievances with representatives of employees" when an exclusive bargaining agent has been properly designated.[1]

The defendants assigned error. The state superior court, however, affirmed the Decision in September of 1981. The town's ensuing appeal was dismissed by the Rhode Island Supreme Court on procedural grounds. *Town of Foster v. Rhode Island State Labor Relations Board*, No. 81–593 (R.I. March 18, 1983) (order dismissing appeal). A later effort to obtain further appellate review by writ of certiorari was summarily rejected by the state supreme court. *Town of Foster v. Rhode Island State Labor Relations Board*, 461 A.2d 679 (R.I.1983) (order denying petition for writ of certiorari).

The grievance meeting was thereafter scheduled to take place on October 13, 1983 (subsequently postponed to November 3, 1983). In advance of the session, Fricker requested written specifications of the charges and reasons for his firing. The defendants declined to provide such particulars. The meeting which occurred on November 3 was, predictably, unproductive. In the aftermath thereof, Fricker filed a notice of claim and demand, *see* R.I.Gen. Laws § 45–15–5, and then sought recourse in this forum.

### III.

The plaintiff's complaint limns six statements of claim in as many counts, viz.:

(1) Count I alleges transgressions of 42 U.S.C. § 1983, U.S. Const. amend. 1, and R.I. Const. art. I, § 20 arising out of the defendants' behavior in discharging the plaintiff and in withholding a hearing to which he was "entitled." Amended Complaint at ¶ 31. The complaint asserts that the defendants intended to "punish plaintiff for exercising his rights to Freedom of Speech and/or Freedom of Association." *Id.*

(2) Count II avers that the defendants deprived Fricker, by virtue of his dismissal, of various constitutionally protected property and liberty interests, all without due process, in violation of 42 U.S.C. § 1983 and U.S. Const. amend. 5, 14. Amended Complaint at ¶ 32.

(3) Count III rehashs the first two counts but adds a conclusory conspiracy allegation under 42 U.S.C. § 1983. Amended Complaint at ¶ 33.

(4) Count IV is a synergy of plaintiffs' due process claim (Count II) and state-law implied contract theory (Count VI). Plaintiff asserts that his due process rights were implied rights under his employment contract and/or that they were "conditions" of his employment. Amended Complaint at ¶ 34.

---

1. The plaintiff alleges that he filed the grievance with the Board. Amended Complaint at ¶ 18. But the Decision, annexed to the amended complaint as Exhibit B, makes it plain that it was the F.O.P. which brought the matter before the Board. *E.g.,* Decision at 4.

(5) Count V alleges that the defendants wrongfully discharged plaintiff and retaliated against him for the exercise of valid statutory and constitutional rights. Amended Complaint at ¶ 35.

(6) Count VI, which expresses a claim based on implied and express rights of contract, alleges that defendants breached their contractual duties by not affording plaintiff a hearing. Amended Complaint at ¶ 36.

## IV.

The principal string to the defense bow is that Fricker's federal claims are time-barred. The parties agree that, in undertaking a limitations analysis under 42 U.S.C. § 1983, the federal courts must borrow from the state larder and must identify the "most appropriate" state statute of limitations, *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), that is, "the state law of limitations governing an analogous cause of action." *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980). The defendants contend that either R.I.Gen. Laws § 9–1–25 ("... [A]ctions or claims in tort against ... any city or town ... shall be instituted within two (2) years of the accrual of any claim of tort," and not thereafter) or R.I.Gen.Laws § 9–1–14 ("Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue," and not thereafter) apply; and that, in either event, the plaintiff has been tardy in suing. Fricker argues that R.I.Gen.Laws § 9–1–13(a) (a ten-year statute of limitations for contract claims) is the most analogous Rhode Island enactment and should govern here.

All parties overlook, however, the trilogy of First Circuit cases speaking to civil rights cases in the context of the workplace. In the first of these, *Burns v. Sullivan*, 619 F.2d 99 (1st Cir.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980), the court of appeals held that neither the general tort nor contract statutes

controlled a policeman's occupational discrimination claim, but that the most similar state limitations period was contained in Mass.Gen.Laws Ann. ch. 151B, § 5, a six-month fair employment practices law. *Burns*, 619 F.2d at 105–08. Next, a half-year period drawn from a source of the same genre (Mass.Gen.Laws Ann. ch. 31, § 42, which dealt with Massachusetts civil servants) was applied to a police officer's claim of political discrimination. *Hussey v. Sullivan*, 651 F.2d 74, 76 (1st Cir.1981) (per curiam). Most recently, the limitations period endorsed in *Hussey* was held to cover due process, equal protection and free speech claims by a Commonwealth employee arising in a public employment milieu. *Holden v. Commission Against Discrimination*, 671 F.2d 30, 33–34 (1st Cir.1982). Rhode Island has a special limitations period (one year) analogous to Mass.Gen.Laws Ann. ch. 151B, § 5, namely, that contained in R.I.Gen.Laws § 28–5–18. That statutory directive is in harmony with the First Circuit trilogy, and has heretofore been applied by this court to employment claims arising under the Civil Rights Acts. *Williams v. General Dynamics Corp.*, C.A. No. 83–0542 B (D.R.I. Sept. 27, 1984) (Boyle, Ch.J., *ore tenus* bench decision).

■ This holding commends itself as a matter of "intra-court comity." *See Daigneault v. Public Finance Corp.*, 562 F.Supp. 194, 197 n. 3 (D.R.I.1983). While the judges of a unified federal district are not constitutionally or legally bound to march in lockstep, the seeds of chaos are sown if a single court prances off in sharply conflicting directions. Lawyers and litigants in such circumstances have little hope of achieving the predictability of results toward which simplification of the judicial process is necessarily targeted. Thus, "absent unusual or exceptional circumstances, judges of coordinate jurisdiction within a jurisdiction should follow brethren judges' rulings." *United States v. Anaya*, 509 F.Supp. 289, 293 (S.D.Fla. 1980) (en banc). There are, in this instance, no extrinsic considerations sufficient to deflect the force of the *Williams* precedent.

■ In reaching this result, the court is mindful of the Supreme Court's recent decision in *Burnett v. Grattan*, —— U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984), holding a Maryland six-month limitation period inapplicable to a civil rights case.[2] *Burnett* is, however, plainly distinguishable. First, the Rhode Island statute provides twice as long a span within which to sue as the Maryland law; and one year is plainly time enough "to take into account practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Acts." *Burnett*, 104 S.Ct. at 2930. *Cf.* 42 U.S.C. § 1986 (congressionally-imposed one-year limitations period). And, R.I.Gen. Laws § 28–5–18 was enacted with procedural safeguards in mind adequate to make favorable comparison with the requirements of *Burnett* compelling. *See* R.I. Gen.Laws §§ 28–5–19, 28–5–20, 28–5–21. *See also Ferguson Perforating & Wire Co. v. Rhode Island Commission for Human Rights*, 415 A.2d 1055, 1056 (R.I.1980). Lastly, while *Burnett*, 104 S.Ct. at 2930, limns the considerations which must be taken into account from the perspective of an allegedly aggrieved complainant in settling upon an "appropriate" limitations period, it in no way undermines the viability of other important factors (*e.g.*, general governmental policy, specificity of state remedy, need for prompt initiation and resolution of civil rights claims) most articulately expressed by Judge Bownes in *Burns*, 619 F.2d at 107–08. When *Burnett* and the First Circuit trilogy are read together and in context, the twelve month window of R.I.Gen. Laws § 28–5–18 passes muster as an eminently suitable temporal measure of the period in which employment claims premised on the Civil Rights Acts must be brought.

■ Fricker could argue, however, with some persuasive force, that whereas § 28–5–18 might be applicable to work-place discrimination based on race, color, religion, gender, ancestral origin, or physical handi-

cap, *see* R.I.Gen.Laws § 28–5–7, it does not extend to claims grounded in freedom of speech and freedom of association. While observing that it would be anomalous to bisect the reach of 42 U.S.C. § 1983 and to apply some different limitations period to discriminatory practices implicating the First Amendment, the court notes that strict reliance on the *Williams* holding is not necessary in the context of this case. If § 28–5–18 was held to be inapposite, then there is little doubt but that the three-year general personal injury statute, R.I. Gen.Laws § 9–1–14, would apply, *Walden, III, Inc. v. Rhode Island*, 576 F.2d 945, 946–47 (1st Cir.1978); *Partin v. St. Johnsbury Co., Inc.*, 447 F.Supp. 1297, 1299–1301 (D.R.I.1978); *see also Graffals v. Garcia*, 550 F.2d 687, 688–89 (1st Cir.1977); *Ingram v. Steven Robert Corp.*, 547 F.2d 1260, 1262–63 (5th Cir.1977); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1063–64 (6th Cir.1973); *cf. Commerce Oil Refining Corp. v. Miner*, 98 R.I. 14, 199 A.2d 606 (1964), unless preempted in this instance (as to the town) by the special two-year time span fixed for suits against, inter alia, municipalities. R.I.Gen.Laws § 9–1–25. All of Fricker's claims are closely analogous to actions ex delicto, or have their roots in public policy; none of his claims are based on express agreement or on matters implied by the contracting parties in their dealings. The heart of the case is the plaintiff's assertion that he was dismissed and denied a hearing because he exercised First Amendment rights. Any duties that the defendants might have owed Fricker in this regard would arise from social policy, not from contract. *See Partin*, 447 F.Supp. at 1300.

And, the state supreme court, which is, after all, the best authority on the meaning, effect, and applicability of R.I.Gen. Laws § 9–1–14, has spoken succinctly to the point. In *Commerce Oil Refining Corp., supra*, that tribunal held:

It is then our conclusion that the phrase 'injuries to the person' as used in the

2. In *Williams, supra*, Chief Judge Boyle took *Burnett* into account in holding § 28–5–18 to be

controlling vis-a-vis employment-oriented civil rights cases.

**1358**

instant statute is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law.

199 A.2d at 610.

*Commerce Oil Refining Corp.* is faithful to well settled principles of Rhode Island law, as the state supreme court has, historically, given an expansive reading to the term "injuries to the person" both in statutes ancestral to § 9–1–14 in the legislative line of descent, *e.g., Griffin v. Woodhead,* 30 R.I. 204, 205–06, 74 A. 417 (1909) ("[T]here are many other classes of injuries to the person than those caused by the application of force to the body."), and in kindred settings. *E.g., Taylor v. Bliss,* 26 R.I. 16, 18–20, 57 A. 939 (1904); *McDonald v. Brown,* 23 R.I. 546, 548–50, 51 A. 213 (1902). Furthermore, it makes no difference that the plaintiff may have elected to cast some of his allegations in a contract mode. *Griffin,* 30 R.I. at 206, 74 A. 417 ("[T]he provisions of [the statute] are explicit as to the period of limitation for all actions for injuries to the person, whatever may be their form.")

It is difficult to perceive a clearer, more classic example of harm purportedly "resulting from invasions of rights that inhere in man as a rational being" than the scenario which the plaintiff paints in bold colors in his amended complaint: the cold-blooded trampling of Fricker's First Amendment guarantees of free speech and unfettered association. Surely, these are no less than rights which he was entitled to exercise "by reason of being a person in the eyes of the law;" and, that being so, his case slips irrefragably within the integument of § 9–1–14. Thus, inasmuch as Fricker's discharge antedated his filing of the instant action by more than four years, the suit would be time-barred in all events.

This court need not narrow the choice further. No useful purpose would be served here by fine-tuning the inquiry in a more meticulous manner. It suffices to say that, given the circumstances of Fricker's case, the limitations defense blocks his federal claims whether the applicable period is viewed as one year (R.I.Gen.Laws § 28–5–18), two years (R.I.Gen.Laws § 9–1–25), or three (R.I.Gen.Laws § 9–1–14).

Nor does this result float, under any cognizable federal standard, with the sundry labels which Fricker attached to his variegated theories of redress. So long as the acts or omissions complained of are essentially the same, it matters not whether the plaintiff garbed his suit in the raiment of constitutional law (First Amendment, Fourteenth Amendment) or of the Civil Rights Acts (42 U.S.C. §§ 1983, 1985(2)). A commonsense application of the borrowing arrangement demands no less; and, not surprisingly, the caselaw is consentient in requiring such consistency. *See Carter v. Supermarkets General Corp.,* 684 F.2d 187, 190 (1st Cir.1982) ("[T]he same statute of limitations should apply to [plaintiff's] equal protection claim as would apply to such a claim under § 1983 ..."). *E.g., Holden, supra* (identic limitations period applied to § 1983 and to § 1985 claims); *Hussey, supra* (same). *Cf. Burnett,* 104 S.Ct. at 2929 n. 11.

**V.**

■ Fricker attempts to avert the slash of the limitations guillotine by padding the date when his cause of action accrued. But, it is firmly settled in civil rights jurisprudence that the limitations period in such an instance begins to run from the date of receipt of notice of termination. *Rivera Fernandez v. Chardon,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *Holden,* 671 F.2d at 34–35. The pendency of proceedings before the Board [3]

**3.** It should be emphatically noted that the plaintiff was not a party to the case before the Board;

did not bar Fricker from suing these defendants, nor did it serve to elongate the span in which the instant case could be brought. While such an automatic extension was suggested in dictum by the First Circuit in *Burns,* 619 F.2d at 106–07, that dictum was later expressly repudiated in *Holden,* 671 F.2d at 34–35. At present, there can be no question but that pending judicial or administrative proceedings do not arrest the limitations clock in these circumstances. *Johnson, supra; Holden,* 671 F.2d at 34–35; *Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315, 319–20 (1st Cir.1978); *cf. Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 236, 97 S.Ct. 441, 447, 50 L.Ed.2d 427 (1976) (Title VII limitations period not tolled during the pendency of labor grievance or arbitration proceedings). After all, a civil rights claimant is under no requirement to exhaust state remedies, *Board of Regents v. Tomanio,* 446 U.S. at 490–92, 100 S.Ct. at 1798–99, for "(t)he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). And, the vitality of *Tomanio* in this regard cannot be doubted. *See Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 514 n. 17, 102 S.Ct. 2557, 2567 n. 17, 73 L.Ed.2d 172 (1982).

### VI.

The plaintiff also argues that he comes within the limitations period on a "continuing violation" theory. But, "[a] continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination." *Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1018 (1st Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980). The continuing violation thesis, which had its genesis in Title VII law, has been discussed at great length by appellate tribunals, *e.g., Ricks,* 449 U.S. at 257–58, 101 S.Ct. at 503–04; *United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Valles Velazquez v. Chardon,* 736 F.2d 831 at 833–834 (1st Cir.1984); *Jones v. Somerville,* 735 F.2d 5 at 7–8 (1st Cir.1984), and no worthwhile purpose would be served by repastinating that tired ground. It is enough to say that, when one focuses upon the facts as set out in the amended complaint, it becomes starkly apparent that Fricker's jeremiad arises from a single, discrete act: his discharge. If the refusal to hold a post-termination hearing suited to a disgruntled ex-employee's taste was sufficient to revivify an otherwise-stale wrongful discharge claim, every late-arriving suitor would simply wipe away his tardiness by clamoring for an audience. Limitations periods would become meaningless gibberish in the law of employment discrimination. And, the lid of Pandora's jar would be hoisted high. Such a rule would make a shambles of the important policies which underlie temporal restrictions on the prosecution of litigation. Its blithe adoption cannot be countenanced by this court. So, the claim of "continuing violation" is, on these facts, as empty as a celibate's couch.

### VII.

Even if the present suit was not time-barred, there would be grave doubt surrounding the resiliency of certain federally-focused aspects of the amended complaint in the face of a motion to dismiss. Fricker was appointed as Foster police chief under § 3.02 of the Charter, which declared that he would "serve at the pleasure of the [town] council." And, he was

---

and the issue there, as plainly appears from the attachments to Fricker's amended complaint, involved not the propriety of his summary dismissal, but the town's refusal to discuss the firing with the F.O.P. *See* text, *ante,* at Part II. No charge was made at the Board, by Fricker or on his behalf, anent discrimination arising out of an effort to discourage membership in the F.O.P., R.I.Gen.Laws § 28–7–13(5), or anent interference by the town, *id.* at § 28–7–13(10), with the rights secured to Fricker qua employee by R.I.Gen.Laws § 28–7–12.

removed under § 14.03 of the Charter, which declaimed in pertinent part that:

> (a) All officers ... appointed by the town council for an indefinite term may be removed from office by the council at any time and with or without cause and with or without a hearing....

Thus Fricker, notwithstanding wholly conclusory allegations to the contrary, served as an at-will public employee. Furthermore, the amended complaint does not aver that Fricker—by reason of race, color, gender or otherwise—was a member of a specially protected class.

Given this overview, it is clear that the plaintiff had no constitutionally sacrosanct property interest in his job. The reach of the Fourteenth Amendment in this wise does not extend to at-will public employees. *Bishop v. Wood*, 426 U.S. 341, 344–47, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Laureano-Agosto v. Garcia Caraballo*, 731 F.2d 101, 103 (1st Cir.1984); *Beitzell v. Jeffrey*, 643 F.2d 870, 874 (1st Cir.1981). "Although plaintiff [ ] may have had an expectation of continued employment it was a unilateral one and does not rise to the level of a constitutionally protected right." *Riggs v. Kentucky*, 734 F.2d 262, 265 (6th Cir.1984).

Similarly, Fricker's liberty interests are not significantly implicated. While the Fourteenth Amendment may come into play where the actions of government are carried out in such a way that could "seriously damage [one's] standing and association in his community," *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), there is no allegation here of special

stigmatization apart from, and in the course of, the discharge itself. *See Paul v. Davis*, 424 U.S. 693, 701–10, 96 S.Ct. 1155, 1160–64, 47 L.Ed.2d 405 (1976). Thus, the amended complaint does not invoke the prophylaxis of the Fourteenth Amendment on liberty grounds. *See Riggs, supra; Laureano-Agosto, supra.* This being so, the town's declination of Fricker's entreaty that a hearing and specification of charges be afforded does not alter the result. *Id.*, 731 F.2d at 104–05. To require one "would simply erase in many instances the constitutional distinction between the 'at will' and the 'tenured' employees." *Id.* at 105. So, the denial of a hearing in these circumstances, in and of itself, was not, as Fricker now urges, independently actionable as a matter of federal law. The plaintiff's asseveration in this respect is a fallacy: post hoc, ergo propter hoc.

█ Fricker's notion that every denial of a hearing mandated by state law is an unconstitutional deprivation of a liberty interest, perfervidly voiced by his counsel at oral argument, was accompanied by no authority in point.[4] Carried to its logical extreme, this line of reasoning would engulf the majesty of the Constitution in a sea of mundane grievances; and would open the floodgates to the extent that virtually every act or omission of state or local government could serve as a launching pad for a satellite thrust into a federal forum. This court cannot lightly accept so revolutionary a premise; nor can the refusal of the town to grant Fricker a post-termination hearing fashioned to his druthers, in the absence of any federally-assured right to be heard, be

---

4. The plaintiff relies heavily on the decision of the Fifth Circuit in *Griffen v. Big Spring Independent School District*, 706 F.2d 645 (5th Cir. 1983). Yet, this reliance is misplaced. *Griffen* echoes familiar refrains: that exhaustion of state remedies is not required to pursue a civil rights action, *id.* at 649; and that reconsideration of a discriminatory decision does not extend the accrual of a cause of action past the date of original notification to the employee. *Id.* The Fifth Circuit salvaged Griffen's claim by application of the Texas "wrong court" tolling statute, viz., Tex.Rev.Civ.Stat.Ann., art. 5539a (Vernon 1958). *Griffen*, 706 F.2d at 650–

53, 657. Fricker has pointed to no kindred provision in Rhode Island law, and the court is aware of none. And in the instant action, unlike *Griffen*, the claimant was not entitled to a hearing, nor did the Board order one for him. *See* text & note 3, *ante.* As the Board was careful to note, "[t]he ... Board wishes both parties to understand, very clearly, that it is not within the purview of the Board's jurisdiction, nor is it its intent to question whether sufficient reason existed to justify the removal of the said Joseph W. Fricker from the position as Chief of Police in the Town of Foster." Decision at 2.

viewed as a neoteric wrong of constitutional dimension sufficient to wind the limitations clock afresh.[5]

## VIII.

For these reasons, the plaintiff's federal claims are stale; and, to the extent not stale (if at all), they are meritless. Once they fall, this court loses any pendent jurisdiction which might otherwise have attached to Fricker's state-law claims. "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also Clark v. Taylor,* 710 F.2d 4, 11–13 (1st Cir.1983); *Rice v. President and Fellows of Harvard College,* 663 F.2d 336, 339 (1st Cir.1981). Thus, it would be supererogatory for this court to dwell on the bona fides of the amended complaint as a state-law vehicle for redress.

## IX.

The court in no sense applauds or endorses the brusque manner in which the defendants appear to have treated a long-time public servant. As in so many instances, there are doubtless at least two sides to this rather unhappy story. But, the jurisdiction of the federal district courts is well defined; as important as rights of free speech and of association may be, claimants must live within the rules. Fricker had ample opportunity to bring suit within the limitations period, but he eschewed that course. Having been the author of his own preclusion, it comes with singular ill grace for him belatedly to drape himself in the mantle of fair play and social justice, hoping thus to avoid the inexorable consequences of his self-wrought procrastination.

Because the applicable limitation period has lapsed, the plaintiff has failed to assert any federally-cognizable claims upon which relief can be granted. And, there is no independent basis upon which Fricker's state-law contentions can stand alone in this forum. Therefore, the amended complaint must be, and it hereby is, dismissed for want of subject matter jurisdiction.

*So ordered.*

---

5. Even if Fricker was entitled to a hearing on his termination—as opposed merely to the town being obligated to discuss the grievance with the F.O.P.—, the case at bar is akin to *Sullivan v. Carignan,* 733 F.2d 8 (1st Cir.1984) (per curiam) in that the plaintiff "has not pointed to any relevant factual question or serious legal theory he was precluded from bringing to the [town's] attention by lack of a hearing." *Id.* at 9. Certainly, his First Amendment claim was bruited about from the outset. And, since the battle lines were clearly drawn at an early stage, the claim of procedural due process infringement for want of a hearing is a dubious proposition at best. *Cf. Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 87–89, 98 S.Ct. 948, 953–954, 55 L.Ed.2d 124 (1978).